# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-842


**BENTON SPECIALTIES, INC., ET AL.**

**VERSUS**

**CAJUN WELL SERVICE, INC., ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 04-68530 H
HONORABLE LORI ANN LANDRY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**ELIZABETH A. PICKETT**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Sylvia R. Cooks, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.


**REVERSED AND REMANDED.**

**Stanford B. Gauthier  II**
**Attorney at Law**
**1405 West Pinhook Rd, Suite 105**
**Lafayette, La 70503**
**(337) 234-0099**
**Counsel for Defendant Appellant:**
**Cajun Well Service, Inc.**

**Jonathan C. Augustine**
**The Augustine Law Firm**
**8674 Quarters Lake Rd., #1**
**Baton Rouge, LA 70809**
**(225) 922-7711**
**Counsel for Defendant Appellee:**
**Petrosurance Casualty Co.**

**Pickett, Judge.**

In this concursus proceeding, Cajun Well Service, Inc. appeals a judgment granting summary judgment in favor of Petrosurance Casualty Co.

### STATEMENT OF THE CASE

In January 1996, Warren Malveaux, an employee of Cajun Well Service, Inc. (Cajun), was injured in the course and scope of his employment. Cajun's workers' compensation insurer, Petrosurance Casualty Co. (Petrosurance), paid benefits to or on behalf of Mr. Malveaux totaling $117,970.07. Mr. Malveaux later sued Benton Specialties, Inc. (Benton), and their insurer Lexington Insurance Co. (Lexington) for the same injuries. Petrosurance intervened in that tort suit to recover the amount it paid in medical expenses and indemnity benefits.

Pursuant to a settlement agreement, Benton and Lexington agreed to pay $45,000.00 to Mr. Malveaux and $59,000.00 to Petrosurance. Cajun, however, argued that it was entitled to a portion of the $59,000.00. Benton and Lexington deposited the money into the registry of the court and initiated this concursus proceeding, naming Cajun and Petrosurance as defendants. Petrosurance filed a Motion for Summary Judgment seeking the entire $59,000.00. Following a hearing on February 25, 2005, the trial court granted the Motion for Summary Judgment in favor of Petrosurance and ordered the Clerk of Court to issue a check to Petrosurance for $59,000.00 plus interest, less costs of the concursus proceeding. The trial court signed a judgment to that effect on March 17, 2005. Cajun appeals that judgment.

### ASSIGNMENTS OF ERROR

Cajun asserts one assignment of error:

The trial court erred in granting Petrosurance's Motion for Summary Judgment.

1

**DISCUSSION**

Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). The mover is entitled to judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with supporting affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

There is no dispute that Petrosurance paid $27,545.85 in medical benefits on behalf of Mr. Malveaux pursuant to its workers' compensation insurance contract with Cajun. There is no dispute that Petrosurance paid $90,424.22 in indemnity benefits to Mr. Malveaux pursuant to the same contract. Thus, the total payments made either by or through Petrosurance as insurer of Cajun were $117,970.07. Further, there is no dispute that the insurance contract includes a standard subrogation clause, which states:

> We have your rights, and the rights of persons entitled to benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

The dispute here centers on how Cajun's premium was determined. The insurance contract between Cajun and Petrosurance included a provision for retrospective premiums. Under such a contract, the insured agrees to pay a smaller annual premium with the possibility that the premium may rise during the term of the contract based on claims made during the term of the contract. In this case, according to the insurance contract, the standard premium Cajun would have paid was $168,307.00 had it not chosen retrospective premiums. By choosing retrospective

2

premiums, Cajun paid a basic premium of $113,158.00, but would be required to pay a higher premium based on losses incurred by Petrosurance during the term of the contract. The amount of additional premiums would be determined by multiplying incurred losses by a conversion factor and the state tax rate.

When Mr. Malveaux was injured and Petrosurance began paying benefits to him, the retrospective premiums began to accrue. The premiums were paid on a monthly basis beginning in March 1996. In total, Cajun paid $77,137.00 in retrospective premiums, plus the original premium of $113,158.00, for a total premium of $190,295.00. Many of the payments Cajun made to Petrosurance corresponded directly to amounts Petrosurance paid to Mr. Malveaux as benefits.

Cajun argues that if Petrosurance is allowed to recover the entire $59,000.00 in this concursus proceeding, it will receive a windfall. It argues that of the $117,970.07 that Petrosurance paid in benefits, Cajun, by paying the retrospective premiums, has already reimbursed them for $77,137.00. Thus, Petrosurance is only entitled to recover the difference between the benefits it paid and the total of the retrospective premiums paid by Cajun, or $40,833.07, and Cajun is entitled to recover $18,166.93. Its argument is premised on the contention that the $77,137.00 was not paid as premiums but as amounts Petrosurance refused to insure.

This is a case of first impression for this court. There are no cases that address the issue of retrospective premiums and no clear language in the contract that addresses whether the insurance company is entitled to receive more in reimbursement than actually paid out of pocket. Cajun argues that Petrosurance was acting merely as an administrator in the payment of some of the benefits. This is a material issue of fact which precludes summary judgment. We reverse the judgment of the trial court

3

and remand this matter for trial on the merits so that a clear determination may be made of the nature of the payments by Cajun to Petrosurance and so that a determination may be made as to whether Cajun is entitled to any reimbursement. Costs of this appeal are assessed against Petrosurance.

**REVERSED AND REMANDED.**